# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JEREL HATCHER**

**VERSUS**

**ALLSTATE INSURANCE COMPANY**

**CIVIL ACTION**

**NO. 3:17-CV-898-JWD-SDJ**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for trial on June 8, 2021. Following trial, the Court received the parties' proposed findings of fact and conclusions of law on July 21, 2021. (Doc. 66 (Plaintiff) and Doc. 65 (Defendant).) On July 28, 2021, Plaintiff and Defendant filed responses to the other's proposed findings of fact and conclusions of law. (Docs. 69 and 70 respectively.)

On October 1, 2021, Defendant Allstate Insurance Company filed a *Notice of New FEMA Claims Guidance*, (Doc. 72), and attached the *NFIP Claims Manual Table of Changes*, (Doc. 72-1). On October 5, 2021, the Court heard oral argument and ordered the parties to file memoranda stating their respective positions on how the Manual changes affected the issues in the case. (*Min. Entry*, Doc. 73.) Both parties filed a brief and reply. (Docs. 75 and 81 (Plaintiff) and Docs. 74 and 78 (Defendant).)

The Court has carefully considered the law, the facts presented and the arguments and submissions of the parties and, is prepared to rule. The Court enters these Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact is to be so classified.

1

## I.    BACKGROUND

1. The plaintiff in this case is Jerel Wayne Hatcher II ("Plaintiff" or "Hatcher"), a resident of Ascension Parish, Louisiana. (Trial Tr. 10, Doc. 67[1].)

2. The defendant is Allstate Insurance Company ("Defendant" or "Allstate"), a foreign corporation duly authorized to issue flood policies in the State of Louisiana. (Trial Tr. 66, Doc. 67.)

3. Plaintiff sued Defendant for recovery under a Standard Flood Insurance Policy ("SFIP") issued to Plaintiff by Defendant ("Subject Policy") insuring Plaintiff's home at a municipal address in Gonzales, LA 70737 (the "Subject Property"). (*Compl.*, Doc. 1.)

4. Allstate paid Plaintiff $96,994.42 under the Subject Policy representing all claimed items except the exterior perimeter sheathing. (*Pretrial Order*, Established Fact 20, Doc. 47 at 5.)

5. On September 18, 2020, Plaintiff moved for partial summary judgment on the issue of the sheathing. (*Pl.'s Mot. for Partial Summ. J.*, Doc. 17).) It was opposed by Allstate. (Doc. 25.) Plaintiff filed a reply. (Doc. 26.) In this motion, Plaintiff asked the Court to grant summary judgment "finding that (a) Defendant is liable for the flood damages to Mr. Hatcher's unrepaired perimeter wall sheathing, and that (b) Mr. Hatcher is not required under the SFIP or NFIP [National Flood Insurance Program] Claims Manual to prove how prior payments were spent on repairing his home before he is afforded coverage for his damaged perimeter wall sheathing." (*Pl.'s Mem. Supp. Mot. Partial Summ. J.* 21–22, Doc. 17-2.)

6. A similar motion, with issues virtually identical to those in Hatcher's motion, was filed in a case pending in another section of this Court, *Nguyen v. Hartford Underwriters Insurance*

---

[1] The original transcript of the trial was docketed as Doc. 62 and the proffered trial testimony as Doc. 63. A corrected transcript of the trial was docketed as Doc. 67 and the proffered testimony as Doc. 68. While the briefing refers to the original Document numbers, all references herein will be to the corrected transcripts.

*Company*, CIVIL ACTION NO. 17-1351-BAJ-SDJ, Doc. 20. The parties were represented by the same firms involved in the present case. That motion was opposed by the defendant. (*Nguyen*, Doc. 27.) A reply was filed by the plaintiff. (*Nguyen*, Doc. 29.)

7.  In *Nguyen*, Judge Brian Jackson ruled: "Reading the SFIP *in pari materia* with the NFIP Claims Manual, the Court concludes that compensable loss to Class 1 sheathing is established upon proof of 'mere contact' with floodwater. Indeed, this is the only logical interpretation." *Nguyen v. Hartford Underwriters Ins. Co*., 514 F. Supp. 3d 831, 843 (M.D. La. 2021).

> In sum, reading the SFIP *in pari materia* with the Claims Manual and [Technical Bulletin] 2 establishes that Class 1 fiberboard sheathing is compensable upon proof that it came into contact with floodwater. Here, the summary judgment evidence establishes that Plaintiff's home was inundated with more than two feet of floodwater for multiple days, removing any doubt that floodwater contacted her sheathing. Thus, under the SFIP, Plaintiff is entitled to reimbursement for her fiberboard sheathing, provided she has otherwise satisfied the SFIP's requirements for additional payment . . . .

*Id*.

8.  The Court in *Nguyen* also ruled that, reading the SFIP *in pari materia* with the Claims Manual, an insurer may not "require proof of how a prior reimbursement was spent before providing an additional payment to reimburse an unrepaired item." *Id*. at 845. The Court explained:

> The Claims Manual removes any ambiguity regarding whether an insurer may require proof of how a prior reimbursement was spent before providing an additional payment to reimburse an unrepaired item: the insured "is not required to prove how they spent funds previously paid on the same claim," and the insurer "may not deny requests for additional payment solely because the policyholder did not provide evidence that all amounts previously paid on the claim . . . were spent to repair or replace covered flood damage."

*Id*. at 845 (quoting the Claims Manual).

9.  In *Nguyen*, the Court granted the plaintiff's motion and ruled that "Plaintiff is entitled to recover from Defendant the replacement cost value of her exterior sheathing." *Id*.

10. Following the *Nguyen* ruling, this Court issued a notice in the present case stating, "While this Court recognizes that the *Nguyen* decision is not binding, the *Nguyen* ruling has a substantial overlap of legal and factual issues with Hatcher's motion [for partial summary judgment]." (*Notice*, Doc. 29.) The parties were given seven days to file pocket briefs to address "why the Court should or should not adopt *Nguyen's* result in this case." (*Id*.)

11. After carefully considering the pocket briefs, the original briefing on the *Motion for Partial Summary Judgment* and the entire record, the Court found:

> (1) [ ] Defendant's efforts to distinguish *Nguyen* in Defendant's supplemental briefing (Doc. 30) unpersuasive; (2) that Plaintiff's showing that this case is similar to *Nguyen* in his supplemental briefing (Doc. 31) is convincing and (3) that, in this case, there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law.

(*Order* 1–2, Doc. 32.) The Court therefore granted Plaintiff's *Motion for Partial Summary Judgment* (Doc. 17) and ruled that "Plaintiff is entitled to recover from Defendant the replacement cost value of his exterior sheathing." (*Order* 2, Doc. 32.)

12. Allstate has made payments to Plaintiff totaling $96,994.42 for various claimed items other than the exterior sheathing. (*Pretrial Order*, Established Fact 20, Doc. 47 at 5.)

13. The Subject Property has been completely repaired except for the exterior perimeter wall sheathing. (Trial Tr. 52, Doc. 67.)

14. Allstate has made no payments to remove or replace any sheathing in the Subject Property. (Trial Tr. 29-30, 71, 92, Doc. 67; Joint Ex. 3; *Allstate Ins. Co.'s Resp. Pl.'s Statement Material Fact* ("*Def.'s Resp. SMF"*) ¶ 9, Doc. 25-19; Tompkins Aff. ¶ 7, Doc. 17-10 at 1.)

15. Plaintiff has limited the present case to the recovery of amounts necessary to repair and replace the exterior perimeter wall sheathing of the Subject Property. (*Def.'s Proposed Post-Trial Findings of Fact and Conclusions of Law* ¶ 25, Doc. 65; Trial Tr. 40, 53, 86, 89, Doc. 67.)

16. Therefore, the single unresolved issue for trial was the replacement cost value of the exterior perimeter sheathing.

17. The case was tried to the Court on June 8, 2021 after which the Court received the parties' proposed findings of fact and conclusions of law ("*PP-TFFCL*") on July 21, 2021. (Doc. 66 (Pl.) and Doc. 65 (Def.).) On July 28, 2021, Plaintiff and Defendant filed responses to the other's proposed findings of fact and conclusions of law ("*Resp. PP-TFFCL*"). (Docs. 69 and 70, respectively.)

18. Despite the clarity of the Court's ruling and the narrow issue to be tried, Allstate attempted at trial and in post-trial briefing to re-urge its position on issues resolved by the Court's granting of Plaintiff's *Motion for Partial Summary Judgment* including, but not limited to, that the sheathing was not damaged, (*see, e.g.*, *Def.'s PP-TFFCL* ¶¶ 31–34, 38, 42–44, Doc. 65), and the loss settlement clause applied to the remaining issues to be tried, (*see, e.g.*, *id.* ¶¶ 62–69, Doc. 65; Trial Tr. 53–54, Doc. 67).

19. The Court will not address the merits of these extraneous issues since they were resolved in the Court's adoption of *Nguyen* as stated in its ruling quoted above. (*Order*, Doc. 32.)

20. In addition, and without citation, Allstate, in its briefing, grossly mischaracterized the Court's ruling as "previously determin[ing] that FEMA's written guidance as related to the sheathing creates a *presumption* of damage [but] all presumptions are rebuttable." (*Def.'s PP-TFFCL* ¶ 44, Doc. 65 (emphasis added).)

5

21. Nowhere in *Nguyen* or in this Court's ruling on Plaintiff's *Motion for Partial Summary Judgment* did it mention a presumption (rebuttable, irrebuttable, or otherwise). For the reasons set out in *Nguyen*, 514 F. Supp. 3d at 843, the Court clearly ruled that "Plaintiff is entitled to recover from Defendant the replacement cost value of his exterior sheathing." (Order, Doc. 32 at 2.)

22. Thus, the only issues at trial were the methods for replacing the sheathing and the cost of same.

23. After the trial, on October 1, 2021, Defendant Allstate Insurance Company filed a *Notice of New FEMA Claims Guidance*, (Doc. 72), and attached the *NFIP Claims Manual Table of Changes*, (Doc. 72-1). On October 5, 2021, the Court heard oral argument and ordered the parties to file memoranda stating their respective positions on how the Manual changes affected the issues in the case. (*Min. Entry*, Doc. 73.) Both parties filed a brief and reply. (*Pl.'s Resp. Req. Br.,* Docs. 75; *Pl's Reply Mem. to Def.'s Br.*, Doc. 81; *Def.'s Mem. Re: App. FEMA's 2021 Claims Manual*, Doc. 74; and *Def.'s Reply Mem. Pl.'s Resp. Req. Br.*, Doc. 78.)

## II.    FINDINGS OF FACT

### A.  The Subject Property

24. At all times relevant, including on the date of loss, August 13, 2016, Plaintiff was and is the owner of the Subject Property located at a municipal address in Gonzales, LA 70737. (Trial Tr. 10–11, Doc. 67.)

25. In 2002, Plaintiff bought the land upon which the house was built, and in 2003, built the home which is the Subject Property. With the exception of the concrete finishing and possibly "one or two other things," Plaintiff built the house himself. (Trial Tr. 10, 45, Doc. 67.) Plaintiff is experienced in construction, having started his work in construction in 1990 as a helper and working his way up to management. (*Id*. at 44.) At the time of the trial, Plaintiff was the Quality

6

Manager for a construction company. (*Id*. at 43.)

26. The Subject Property "consists of a single story, wood-framed structure . . . . The exterior walls are clad with brick veneer and stucco, and the foundation consists of a concrete slab-on-grade." (*Pretrial Order*, Established Fact 10, Doc. 47 at 4; Trial Tr. 44, Doc. 67.)

27. The exterior perimeter sheathing on the Subject Property was Oriented Strand Board ("OSB"). (Trial Tr. 25, 161, 204, Doc. 67; *Pl.'s Statement Material Fact* ("*Pl's SMF*") ¶ 4, Doc. 17-1 and *Def's Resp. SMF* ¶ 4, Doc. 25-19; Maclay Aff. ¶ 7, Doc. 25-5.)

### B.  The Policy

28. Allstate is a Write-Your-Own ("WYO") Program Carrier participating in the United States Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act, as amended ("NFIA"). (*Pretrial Order*, Established Fact 1, Doc. 47 at 3.)

29. Allstate, in its capacity as a Write-Your-Own Program carrier, issued the Subject Policy, SFIP No.1804801841, to provide flood insurance to the Subject Property. (*Pretrial Order*, Established Fact 3, Doc. 47 at 3.)

30. The Subject Policy had effective dates from May 1, 2016, to May 1, 2017, and was in full force and effect on the date of Plaintiff's August 2016 flood loss. (*Pretrial Order*, Established Fact 4, Doc. 47 at 3.)

31. The Subject Policy provided Coverage A (Building) limits of $237,900.00 subject to a $1,250.00 deductible. (*Pretrial Order*, Established Fact 7, Doc. 47 at 4.)

### C.  Flood Damage to Subject Property

32. On August 13, 2016, the Subject Property sustained flooding as a result of severe rains. (*Pretrial Order*, Established Fact 11, Doc. 47 at 4.)

33. On that day, the Subject Property "experienced a flood loss, causing damage to the building."

(*Pretrial Order*, Established Fact 12, Doc. 47 at 4.)

34. Specifically, "the Subject Property was inundated with approximately 13" of floodwater on the interior and sustained approximately 13" of floodwater on the exterior." (*Pretrial Order*, Established Fact 15, Doc. 47 at 4; Joint Ex. 5, Independent Adjuster's Preliminary Report; *see also* Trial Tr. 16–18, 25, 146, 173, Doc. 67.) The contaminated water remained in the interior of the Subject Property for 64 hours (from 8/15/16 at 10 p.m. to 8/18/16 at 2 p.m.). (Joint Ex. 5, at PC 1296; Trial Tr. 146, Doc. 67.)

### D. Flood Damage to OSB Sheathing

35. The perimeter wall sheathing of the Subject Property is Oriented Strand Board ("OSB") sheathing. (Trial Tr. 25, 93–94, 161, 204, Doc. 67; *Pl.'s SMF* ¶ 4, Doc. 17-1 and *Def.'s Resp. SMF* ¶ 4, Doc. 25-19; Maclay Aff. ¶ 7, Doc. 25-5.)

36. OSB is "basically chipped wood that's compressed and glued together." (Trial Tr. 94, Doc. 67.)

37. Depending on the type OSB, the OSB sheathing in the Subject Property was either a Class 1 or Class 2 material. (Trial Tr. 161, Doc. 67; Pl.'s Ex. 6 at 9[2]).

38. According to <u>Technical Bulletin 2/August 2008 entitled Flood Damage Resistant Materials Requirements for Buildings Located in Special Hazard Areas in Accordance with the National Flood Insurance Program</u>, Class 1 and 2 building materials "cannot survive the wetting and drying associated with floods." (Pl.'s Ex. 6 at 6; *see also* Trial Tr. 94, Doc. 67.)

39. The parties agree that during the August 13, 2016, flood, "floodwaters came into direct contact with the Subject Property's OSB perimeter wall sheathing." (Tompkins Aff. ¶ 11, Doc. 17-10 and *Def.'s Resp. SMF* ¶ 8, Doc. 25-19; *see also* Trial Tr. 26, 64, 217, Doc. 67.)

---

[2] The page number referred to for this exhibit is the exhibit page number and not the internal page number.

40. If the 2020 Claims Manual and Technical Bulletin 2 apply, Plaintiff's sheathing was damaged by virtue of its "mere contact" with flood waters because the OSB was either a Class 1 or 2 building material which "cannot survive the wetting and drying associated with floods." (*Nguyen,* 514 F. Supp. 3d at 843; Pl.'s Ex. 6; *see also* this Court's *Order*, Doc. 32.)

41. This Court granted Plaintiff's *Motion for Partial Summary Judgment* (Doc. 17), adopting the reasoning of *Nguyen.* (*Order*, Doc. 32.) Based on the undisputed fact that Plaintiff's OSB sheathing had come into direct contact with the flood waters, the Court ruled that "Plaintiff is entitled to recover from Defendant the replacement cost value of his exterior sheathing." (*Order*, Doc. 32 at 2.)

42. To date, the flood damage to the Subject Property's wall sheathing has not been repaired or replaced. (Trial Tr. 52, Doc. 67; *Def.'s Resp. SMF* ¶ 10, Doc. 25-19.)

43. Despite the Court's ruling, and the irrelevance of whether Plaintiff's OSB sheathing suffered visible changes as a result of the flood, both parties offered evidence in the form of five witnesses regarding the appearance of the OSB sheathing after the flood: Plaintiff Jerel Hatcher (Trial Tr. 25–27, Doc. 67); Plaintiff's expert, NFIP flood claims adjuster Tommy Jerrel Tompkins, Jr. ("Tompkins"); John "Jackie" Maclay ("Maclay"), independent NFIP adjuster, who worked for Pilot Catastrophe Services and who visited the Subject Property twice following the flood, adjusting the claim on behalf of Allstate (*Pretrial Order*, Established Fact 18, Doc. 47 at 4; Maclay Aff. ¶ 5, Doc. 25-5); Allstate's corporate representative Jeremy Mates ("Mates"); and Allstate's designated expert, NFIP flood claims adjuster Jay Bryant ("Bryant").

44. The only two witnesses who claim to have actually witnessed Plaintiff's OSB sheathing directly is Plaintiff, who testified in court during the trial, and Maclay, whose testimony was by affidavit. The other three witnesses on this point all testified on the basis of their review of

photographs taken by Maclay.

45. Plaintiff testified that the OSB sheathing was "saturated", with the "glue loose[ning]" and "pieces of OSB start[ing] to peel up." (Trial Tr. 26, Doc. 67.) He testified that "swell[ing]", "separat[ion]", "peel[ing]" and "discolor[ation]" "was evident." (*Id*. at 26–27.)

46. Maclay testified via affidavit that "while the walls were open, I did not observe damage to the sheathing. Specifically I did not observe any delamination, any signs of warping or any other signs of direct physical damage by or from the flood." (Maclay Aff. ¶ 7, Doc. 25-5.) Maclay took photographs of the OSB sheathing which he attached to his affidavit.

47. Tomkins testified that his opinion that the sheathing was damaged was based on the fact that it got wet. (Trial Tr. 162–63, Doc. 67). Mates, (*id.* at 179), and Bryant, (*id*. at 204), testified from the photographs and stated that they saw no visible damage to the OSB sheathing.

48. The Court found Hatcher to be a credible witness. The Court was unable to observe the demeanor of Maclay and therefore was unable to measure his credibility since he testified via his affidavit. The other three witnesses all testified in court but were testifying from the photographs taken by Maclay. Based on Hatcher's credible in-court testimony, the Court finds that there were physical changes and damage to the sheathing caused by the flood.

49. At the time the Court granted summary judgment in favor of Plaintiff, and at the time of the trial, FEMA's 2020 Manual applied. Because, as found by this Court in *Nguyen* and adopted by this Court in its *Order* ruling on Plaintiff's *Motion for Partial Summary Judgment* (Doc. 32), damage to the OSB sheathing occurred as a result of contact with the flood waters (which all parties agree occurred) (Tompkins Aff. ¶ 11, Doc. 17-10, and Maclay Aff. ¶ 8, Doc. 25-5; *see also* Trial Tr. 26, 64, 217, Doc. 67; *Def.'s PP-TFFCL* ¶ 46, Doc. 65), no observable change in the physical appearance of the OSB sheathing was necessary to prove damage. Thus, at the

time of trial, the Court did not need to determine whether there was a physical change to the OSB due to its contact with the flood waters.

50. However, both Plaintiff and Allstate agree that the 2021 Manual applies to this case. (*Pl.'s Resp. Req. Br.*, Doc. 75-1 at 1 ("Plaintiff asserts that the 2021 Manual supersedes prior guidance in the 2020 NFIP Claims Manual…and therefore applies to Hatcher."); *Def.'s Mem. Re: App. FEMA's 2021 Claims Manual*, Doc. 74 at 4 ("Since the 2021 Claims Manual supersedes prior guidance, Allstate submits that the 2021 Claims Manual best effectuates NFIP policy.").)

51. The 2021 Claims Manual eliminates that section of the 2020 Manual dealing with sheathing. In the Comment section regarding the change, it states:

> FEMA is removing guidance specific to sheathing. The SFIP requires direct physical loss by or from flood, and there must be evidence of physical changes to the property for coverage. The adjuster should document damage caused by the flood . . . and include the appropriate scope of repair for covered damage. As this approach mirrors general NFIP claim handling guidance, FEMA no longer believes a separate section addressing sheathing is warranted.

(*NFIP Claims Manual Table of Changes* 29, Doc. 72-1.)

52. Plaintiff argues that the 2021 Manual does not change Technical Bulletin No. 2 and "does *not* change the four corners of the . . . SFIP nor the FEMA-established fact that Class 1 and Class 2 sheathing is damaged upon mere contact with floodwaters." (*Pl.'s Resp. Req. Br.,* Docs. 75-1 at 1.) Allstate argues that the 2021 Manual supersedes Technical Bulleting No. 2, requires that there be evidence of physical changes to the sheathing, and undercuts the entire basis for the ruling in Nguyen as well as this Court's ruling granting Plaintiff's *Motion for Partial Summary Judgment*. (*Def.'s Reply Mem. Pl.'s Resp. Req. Br.*, Doc. 78 at 2–3.)

53. The Court need not resolve this dispute since the Court has found, as a matter of fact, that

Plaintiff proved physical damage and changes to the sheathing based on Hatcher's description.

### E. Replacement Cost Value of OSB Sheathing

54. A second major issue in this case is whether Plaintiff proved the cost for replacing the sheathing. On this point, Plaintiff's expert Tommy Tompkins of ATA Consulting, LLC ("ATA") was the only witness who testified. Allstate offered no evidence on the cost of replacing the sheathing.

55. Plaintiff retained the services of ATA to prepare a cost estimate to repair and/or replace items damaged by the flood. (Trial Tr. 30, Doc. 67.) ATA hired a contractor to inspect the Subject Property, (*id.* at 163–64), and, based on the results of that inspection, an estimate was prepared and timely submitted by Plaintiff to Allstate for payment,[3] (Trial Tr. 31–40, 129, Doc. 67; Pl. Ex. 1[4] at PC 86–139; *see also* Pl. Ex. 3[5]). The ATA estimate included the cost of replacing the

---

[3] Although Defendant argues that Hatcher's claim was filed on August 13, 2017, (*Def.'s PP-TFFCL* ¶ 84, Doc. 65), Hatcher explained that this was simply a typographical error and he had submitted it on August 13, 2016, (Trial Tr. 38–40, Doc. 67). Allstate's representative at trial, Jeremy Mates, agreed and confirmed that Hatcher's claim was submitted timely. (*Id.* at 69.)

[4] Defendant did not object to this exhibit in connection with Plaintiff's testimony. (Trial Tr. 34, Doc. 67.) However, in connection with Tompkins' testimony, Defendant objected to the ATA portion of the exhibit because "he [Tompkins] did not rely upon the estimate in preparing his report, so . . . this would be total hearsay . . . " (*Id.* at 96.) The Court deferred ruling until it had an opportunity to review it's ruling on Defendant's *Daubert* challenge to Tompkins' testimony where the same issue was presented. *Anderson v. Allstate Ins. Co.*, No. 17-cv-597, Doc. 218; 2012 WL 292440 (M.D. La. Jan. 28, 2021). After reviewing its prior ruling, the Court found Allstate's objection was without merit and overruled Defendant's objection to Plaintiff Exhibit 1, the ATA estimate. (Trial Tr. 96, Doc. 67.) The reasons for its ruling are set out in detail in the Court's ruling on Allstate's *Daubert* challenge and orally during the trial. (Trial Tr. 107–09, Doc. 67.) Although Tompkins stated in his deposition he had not reviewed the ATA estimate in preparation for writing his report, (*id.* at 80–81), this was clearly a misstatement as is evident from his report, (Pl. Ex. 3), and his affidavit given in opposition to the *Daubert* challenge, *Anderson v. Allstate Ins. Co.*, No. 17-cv-597, Doc. 199-3, (Trial Tr. 107–109, Doc. 67). In addition, Tompkins testified credibly at trial that he saw and relied upon the ATA estimate in writing his report and giving his opinion at trial. (Trial Tr. 71, 92, 97–98, Doc. 67.) The Court notes that in his attempted impeachment of Tompkins at trial on this point, Allstate's counsel failed to provide the witness with an opportunity to explain the discrepancy. (Trial Tr. 80–81, Doc. 67.) *See also* Fed. R. Evid. 613 ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires.").

[5] Defendant objected to Plaintiff Exhibit 3, the report of Plaintiff's expert Tommy Tomkins because "[i]t's hearsay [and] there's no foundation set yet . . . " (Trial Tr. 67, Doc. 67.) The Court deferred its ruling on that objection until Tomkins testified. (*Id.* at 68.) During Defendants' cross-examination of Tomkins, Defendant made, without objection, extensive use of Plaintiff Exhibit 3. (*See, e.g.*, *id.* at 118–19, 121–31, 134–40.) At the conclusion of Tomkins' testimony, the Court overruled Defendants' objection. (*Id.* at 166.)

sheathing utilizing the exterior replacement method. (Pl. Ex. 1 at PC 92–93; Trial Tr. 100–104, 162, Doc. 67.)

56. ATA also prepared a Proof of Loss form corresponding to the amounts determined to be owed in the ATA detailed repair estimate which was signed and sworn to by Hatcher after he reviewed both the proof of loss and estimate. (Trial Tr. 32–40, Doc. 67; Pl. Exs. 1, 3).

57. The pricing on ATA's repair estimate, (Pl Ex. 1 at 90–130), was accomplished by the use of a software program called Xactimate, (Pl. Ex. 3 at 3; Trial Tr. 105, 129, Doc. 67), used by 22 of the top 25 property insurance companies in the United States, (Pl. Ex. 3 at 3).

58. Tomkins is a senior claims examiner, consultant and fifty percent owner of ATA. (Trial Tr. 73, 109, Doc. 67.) He entered the insurance claims profession in 2001, (Trial Tr. 74, Doc. 67), and has been an authorized NFIP adjuster since 2012, (*id*. at 75). Since that time, he has worked between 400 and 700 NFIP claims. (*Id.* at 77.) The Court accepted Tompkins as an expert in flood claims adjusting. (*Id.* at 90.)

59. While Tompkins has never replaced perimeter wall sheathing himself and was never trained to replace it, (Trial Tr. 83, Doc. 67), he "received substantial guidance, training and direction on how to and [sic] properly adjust sheathing that has been damaged as a result of being touched by floodwater," (*id.* at 87–88.) Furthermore, he "read and researched multiple methods [of sheathing replacement] that have been presented by multiple WYO carriers" including "interior methods of repair." (*Id.* at 84.) He also possesses experience in adjusting interior method replacement of perimeter wall sheathing. (*Id*. at 120.)

60. While Tomkins did not physically inspect the Subject Property (*Pretrial Order*, Established Fact 25, Doc. 47 at 5; Trial Tr. 91, Doc. 67), he reviewed the following items in preparation for reaching his opinions: "Allstate's final report and all relevant documentation provided by

Allstate, including the ATA estimate, including the preliminary report information regarding water lines and flood duration and also FEMA released documents, WYO bulletins technical bulletins." (Trial Tr. 72, Doc. 67; *see also id*. at 91, 97.) This included the photographs taken by Allstate's independent adjuster Maclay, (*id.* at 92), and specifically, photographs of the OSB sheathing, (*id.* at 92–93 (referring to Joint Ex. 14, PC-023, 231, 234, 239, 243, 20-DSCN2297 and 20-DSCN2299).)

61. Tompkins testified that, in his opinion, the proper method of removing the damaged sheathing and replacing it was through the exterior of the home.  Specifically, Tompkins was asked, "Based on your experience, training and knowledge it's your expert opinion that the bricks must be removed to properly access and remove and replace Mr. Hatcher's OSB sheathing, is that correct?" (Trial Tr. 104, Doc. 67.)  He replied, "That is correct." (*Id.*)

62. When asked to opine on the "proper method of repair," Tompkins answered,

> The removal of the exterior brick veneer. The exterior brick veneer is attached to the damaged exterior wall sheathing by way of brick ties. So in order to properly access the damaged sheathing you would remove the exterior finish and then you would remove the metal lath and stucco for the stucco areas.

(Trial Tr. 99–100, Doc. 67.)

63. He testified that the reasonable and necessary cost to remove and replace the perimeter wall sheathing via the exterior method, including all necessary operations, is $34,951.62. (Trial Tr. 100–04, 162, Doc. 67; Pl. Exs. 1, 3).

64. Tompkins itemized the costs for exterior replacement of the OSB sheathing as follows:

> A.  $22,944.69 to remove and replace the brick veneer [line items 1a and 1b];
>
> B.  $1,706.12 to rake the brick rubble [line item 2];
>
> C.  $1,227.23 to remove and replace the metal lath and stucco [line items 3a and 3b];

14

D.  $75.77 to remove and replace the vapor barrier/house wrap behind the stucco [line items 4a and 4b];

E.  $299.19 to seal and paint the stucco [line item 5];

F.  $2,912.97 to remove and replace the sheathing [line items 6a and 6b];

G.  $542.30 to remove and replace the vapor barrier/house wrap behind the brick veneer [line items 9a and 9b];

H.  $1,111.04 to remove and replace the facia [line items 10a and 10b];

I.  $361.10 to prime and paint the fascia [line item 11];

J.  $1,876.99 to remove and replace the soffit [line items 12a and 12b];

K.  $763.98 to prime and paint the soffit [line item 13];

L.  $520.93 to remove and replace the soffit vent [line item 14];

M.  $170.45 to apply urethane foam sealant [line item 15];

N.  $310.10 to detach and reset the electrical meter base and main disconnect [line item 16]; and

O.  $128.76 to detach and reset two (2) exterior faucets [line item 17].

(Pl. Ex. 1 at PC 92–93; Trial Tr. 99–104, Doc. 67.)

65. The prices shown in the ATA estimate were 2016 Baton Rouge, Louisiana prices garnered via the Xactimate software program. (Trial Tr. 104–05, Doc. 67.)

### F.  Allstate's Arguments Regarding Cost of Sheathing Replacement

66. In short, Allstate argues that Tompkins' testimony is not credible, that Plaintiff failed to prove the need to replace the sheathing from the exterior of the home or the preferability of that method, and that Allstate's expert Jay Bryant testified that an interior replacement would be "easier." Allstate argues that because Plaintiff failed to provide an estimated cost for an interior replacement of the sheathing, Plaintiff has failed to prove his damages.

15

67. More specifically, Allstate argues (*Def.'s PP-TFFCL*, Doc. 65 at 11–14) that Plaintiff has failed to prove the amount claimed for the exterior perimeter sheathing for the following reasons:

    A. Jeremy Mates, a Claims Service Leader for Allstate Flood, (Trial Tr. 167, Doc. 67), testified at trial that there are at least two approaches or methods for the repair and replacement of perimeter wall sheathing: one from the exterior of the home and one from the interior, (*id.* at 175). Plaintiff selected only a repair method from the exterior. (*Id.* at 99–100; Pl. Ex. 1 at 7–9.)

    B. According to Mates, once damages to perimeter sheathing are verified, Allstate examines multiple approaches on how to repair or replace same. (Trial Tr. 174, Doc. 67.)

    C. Per Mates, Allstate obtains different estimates for interior and exterior approaches in tandem with the retention of a subject matter expert, an engineer or a contractor, to inform Allstate as to "why it can't be done one way or the other." (Trial Tr. 177, Doc. 67.) During the aftermath of the August 2016 Louisiana flooding, Allstate paid claims using both an exterior method and an interior method. (*Id.*)

    D. FEMA's 2020 Claims Manual states that, "[o]nce an NFIP insurer has determined that perimeter wall sheathing in an insured building experienced direct physical damage by or from flood…" and verifying exclusion of other SFIP limitations, "…an appropriate and reasonable repair can generally be made without demolishing the exterior surface of the building unless it is economically or physically impractical to do so." (Pl. Ex. 5 at 27.) Further, FEMA's Claims Manual establishes each loss must be adjusted ". . . on its own merits and base the

16

appropriate repair method on the extent of damage and the construction type at the time of loss." Stating that at least one estimate for each approach should be obtained, the Manual goes on to state that the adjuster may need to consult with professionals ". . . to determine the most reasonable and cost-effective method of repair." (*Id.*; *Def's PP-TFFCL* ¶ 57, Doc. 65.)

E.   Although Tompkins has adjusted perimeter wall sheathing replacement from the interior on other properties (Trial Tr. 120, Doc. 67), for the Subject Property he recommended only the exterior method and the costs associated with that method. (*Def.'s PP-TFFCL* ¶ 47, Doc. 65.)

F.   Allstate argues that Plaintiff's expert, Tompkins, never explained the "why" as to his opinion that it was "proper" to replace exterior wall sheathing from the exterior. "Stated differently, Mr. Tompkins' opinion failed to present any information to this Court as to why Plaintiff's preferred exterior repair method was more appropriate, more reasonable, more economical and physically more practical than any other method of repair, whether from the exterior or from the interior." (*Def.'s PP-TFFCL* ¶ 60c, Doc. 65.)

G.   Defendant concludes that Plaintiff possesses all burdens of proof, including the burden to prove the most appropriate, reasonable, economical physically practical methods of repair of perimeter wall sheathing and Plaintiff failed to meet his burden of proof. "Specifically, Plaintiff has failed to offer any evidence that Plaintiff's repair method for perimeter wall sheathing can only be accomplished from the exterior." (*Def.'s PP-TFFCL* ¶ 61, Doc. 65.)

68. At trial, Allstate called their designated expert, Jay Bryant. (Trial Tr. 194–217, Doc. 67.) Bryant is the owner of BADJ or Bryant Adjusting Consultants and has worked in varying capacities as both an Independent Adjuster and as a General Adjuster in the NFIP since 2004. (*Id.* at 195–97.) Over the course of his career, Bryant moved up through the ranks to become a NFIP General Adjuster due to his construction experience and knowledge. (*Id.* at 196.)

69. Bryant was accepted by the Court in three fields: as an expert Independent Adjuster, as an expert NFIP General Adjuster, and as an expert contractor. (Trial Tr. 197–98, Doc. 67.)

70. Like Tompkins, Bryant did not visit the Subject Property but relied on his review of "the complete independent adjuster's file documentation from the WYO Allstate, and [he] reviewed all the documentation provided to him by the Plaintiffs" as well as the Independent Adjuster's and Plaintiff's photographs. (Trial Tr. 208–09, Doc. 67.)

71. In reviewing the Independent Adjuster's report and photographs, he confirmed that "Hatcher's sheathing [was] touched directly by floodwater." (Trial Tr. 217, Doc. 67.)

72. Bryant testified that he had experience in repairing perimeter wall sheathing, (Trial Tr. 199–201), and stated that, in his experience generally, "we found it was easier to replace sheathing from the inside than to replace, say, all the brick or the really tall cedar siding that would run up the side of the building", (*id.* at 200–01). Yet, he admitted that his report "did not address repairing Mr. Hatcher's sheathing." (*Id*. at 217.) Neither did his trial testimony. Hence, Bryant did not opine on whether, in connection with the Subject Property, interior replacement would have been feasible, preferable to the exterior method recommended by Tompkins, or the cost of an interior replacement.

### G. Plaintiff's Arguments Regarding Method and Cost of Sheathing Replacement

73. In sum, Plaintiff responds that there is no requirement to obtain an estimate for both the exterior and interior method of replacement and that Plaintiff's expert Tomkins testified that the exterior bricks "must be removed to properly access and remove and replace Mr. Hatcher's OSB sheathing." (*Pl.'s Resp. PP-TFFCL* ¶ 14, Doc. 69 (citing Trial Tr. 104, Doc. 67).) Plaintiff also argues that Defendant has "failed to meet its transferred burden of proof because it failed to provide any pricing for an interior method of sheathing replacement which could have been used by this Court to compare to the exterior sheathing replacement method testified to by Mr. Tompkins." (*Id.* at ¶ 17.)

74. Plaintiff argues that Defendant correctly cites FEMA's 2020 Claims Manual that "[o]nce an NFIP insurer has determined that perimeter wall sheathing in an insured building experienced direct physical damage by or from flood . . . " and has verfied exclusion of other SFIP limitations, ". . . an appropriate and reasonable repair can generally be made without demolishing the exterior surface of the building unless it is economically or physically impractical to do so." (*Pl.'s Resp. PP-TFFCL* ¶ 11, Doc. 69 (citing *Def.'s PP-TFFCL* ¶ 57, Doc. 65).)

75. However, Plaintiff emphasizes that FEMA's Claims Manual also establishes each loss must be adjusted ". . . on its own merits and base the appropriate repair method on the extent of damage and the construction type at the time of loss." (*Pl.'s Resp. PP-TFFCL* ¶ 11, Doc. 69.)

76. Furthermore, says Plaintiff, Defendant incorrectly adds to FEMA's 2020 Claims Manual that at least one estimate for each approach, interior and exterior, must be obtained. (*Def.'s PP-TFFCL* ¶ 57, Doc. 65.) In fact, there is no requirement within the SFIP or FEMA's 2020 Claims Manual requiring that two estimates be provided of the cost to replace the perimeter wall

sheathing. FEMA's 2020 Claims Manual only requires that perimeter wall sheathing be replaced by the ". . . most reasonable and cost-effective method of repair." (Pl. Ex. 5).

77. Plaintiff maintains he has met his burden through Tompkins' testimony that, "[a]fter reviewing the perimeter wall sheathing in the instant matter . . . the proper method to replace the sheathing in the subject property, Mr. Hatcher's home, was to replace the sheathing using the exterior sheathing repair method." (*Pl.'s Resp. PP-TFFCL* ¶ 14, Doc. 69 (citing Trial Tr. 104, Doc. 67).)

78. Plaintiff concludes by arguing without citation to authority that "Defendant failed to meet its transferred burden of proof because it failed to provide any pricing for an interior method of sheathing replacement which could have been used by this Court to compare to the exterior sheathing replacement method testified to by Mr. Tompkins." (*Pl.'s Resp. PP-TFFCL* ¶ 17, Doc. 69.)

## H. Discussion

79. Plaintiff has satisfactorily proved by a preponderance of the evidence that the cost of replacing Hatcher's sheathing via the exterior method is $34,951.62, and the Court accepts Tompkins' testimony that the exterior method of replacement he recommends is a proper method of sheathing replacement for the subject property. (Trial Tr. 199–204, Doc. 67.) Tompkins satisfactorily explained what would be involved in such an exterior replacement. (*Id.*)

80. Therefore, as is explained in more detail in the Conclusions of Law Section, the 2021 Claims Manual has removed the requirements detailed above that the adjuster must consider and document alternative methods of replacing sheathing. (*Compare* Pl. Ex. 5 at 27–28, *with NFIP Claims Manual Table of Changes* 29, Doc. 72-1.) The Court finds therefore that Plaintiff has

met his burden of proof regarding the amount required to replace the flood-damaged sheathing, specifically, $34, 951.62.

## III.    CONCLUSIONS OF LAW

### A.  Standard

81. As a WYO Program Carrier, Allstate acts in a "fiduciary" capacity, 44 C.F.R. § 62.23(f), as the fiscal agent of the United States and at the expense of the United State Treasury, 42 U.S.C. § 4071(a)(1). *See also Pretrial Order*, Established Fact 3, Doc. 47 at 3.

82. As this Court stated in *Nguyen*, the Court is guided by "the requirement that a policy of insurance issued pursuant to a federal program must be strictly construed and enforced." *Nguyen v. Hartford Underwriters Ins. Co*., 514 F. Supp. 3d 831, 840 (M.D. La. 2021) (citing *Monistere v. State Farm Fire & Cas. Co*., 559 F.3d 390, 394 (5th Cir. 2009) (quotation marks and alterations omitted)); *see also Cummings v. Fid. Nat. Indem. Ins. Co*., 636 F. App'x 221, 224 (5th Cir. 2016) (same); *Garcia v. Wright Nat'l Flood Ins. Co*., No. 4:18-CV-3956, 2020 WL 4677573, at *2 (S.D. Tex. May 19, 2020) (same).

> Because insurance companies act as "fiscal agents" of the government under the National Flood Insurance Program, all policy awards deplete federally allocated funds. *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir. 1987). Therefore, " 'not even the temptations of a hard case' will provide a basis for ordering recovery contrary to the terms of a regulation, for to do so would disregard 'the duty of all courts to observe the conditions defined by Congress for charging the public treasury.' " *Forman v. Fed. Emergency Mgmt. Agency*, 138 F.3d 543, 545 [(5th Cir. 1998)] (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420, 110 S. Ct. 2465, 110 L.Ed.2d 387 (1990)).

*Nguyen*, 514 F. Supp. 3d at 840.

### B. Effect of the Court's Ruling on Plaintiff's *Motion for Partial Summary Judgment*

83. The Court need not decide whether the changes in the 2021 Claims Manual removing references to the various classes of sheathing alters that part of the Court's ruling on Plaintiff's *Motion for Partial Summary Judgment*, (*Order*, Doc. 32 at 2), finding that the sheathing was damaged by mere contact with the flood waters because the Court finds that Plaintiff has proved actual physical changes to the sheathing.

84. Plaintiff argues that the 2021 Claims Manual does not change the reasoning of *Nguyen* as the basis for its ruling, as the Court found (and finds) Allstate is not entitled to "require proof of how a prior reimbursement was spent before providing an additional payment to reimburse an unrepaired item." *Nguyen*, 514 F. Supp. 3d at 845, *i.e.*, the sheathing. (*Pl.'s Resp. Req. Br.*, Docs. 75 at 5.) Indeed, Plaintiff points the Court to the following language from the 2021 Manual consistent with both the 2020 Claims Manual and the ruling in *Nguyen*: "The insurer may not deny a RAP [request for additional payment] based solely on the fact the policyholder has not completed repairs or because the policyholder has not exhausted all monies paid to them on repairs." (*Id.* (citing *2021 NFIP Claims Manual § 49*, Doc. 75-7 at 1).)

85. Defendant fails to address this argument in its reply brief. (*Def.'s Reply Mem. Pl.'s Resp. Req. Br.*, Doc. 78 at 3.)

86. The Court agrees with Plaintiff that the 2021 Manual does not change the holding or reasoning in *Nguyen* or the Court's ruling based thereon.

87. Thus, the Court rejects the following of Allstate's arguments as moot, and to the extent not moot, rejects them based on *Nguyen*: 1) that the SFIP's Replacement Cost Value Settlement provision applies, (*Def.'s PP-TFFCL* ¶¶ 31–37, Doc. 65); 2) that Plaintiff's failure to satisfy the proof of loss requirement "diminishes the veracity of Plaintiff's proof of loss", (*id.* at ¶¶

38, 39–46); 3) that Plaintiff profited from his flood insurance and therefore cannot recover, (*id.* at ¶¶ 47–54); and 4) that Plaintiff's failure to produce evidence of incurred costs as to items unrelated to the sheathing affects his right to recover for the unrepaired sheathing, (*Def.'s Resp. PP-TFFCL*, Doc. 70 at 3).

88. Further, the Court finds that Plaintiff's proof of loss regarding the only item at issue, sheathing, was satisfactory, sufficiently detailed, and met the terms required of the policy. (Pl. Exs. 1 and 2.)[6]

89. The Court finds that Defendant has failed to prove its entitlement to any offset.

### C.  Has Plaintiff Met His Burden Regarding Entitlement to Cost of Sheathing Replacement?

90. The remaining question for the Court is whether Plaintiff has carried his burden of proof as to the cost of replacement of the damaged sheathing.

91. This Court found as a matter of fact that Plaintiff satisfactorily proved by a preponderance of the evidence that the cost of replacing Hatcher's sheathing via the exterior method is $34,951.62 and the Court accepts Tompkins' testimony that the exterior method of replacement he recommends is a proper method of sheathing replacement for the subject property. (Trial Tr. 199–204, Doc. 67.)

92. At the time of trial and in the original post-trial briefing, both parties argue and accept that the 2020 FEMA Claims Manual is relevant, applicable and controlling on the issue of what evidence needs to be presented in proving the method of replacement of the sheathing and cost of same and cited to Manual (Pl. Ex. 5 at 27). (*Def.'s PP-TFFCL* ¶¶ 57, 61, Doc. 65; *Pl.'s Resp. PP-TFFCL* ¶¶ 11–12. Doc. 69; *Def.'s Resp. PP-TFFCL* ¶ 2, Doc 70.) What they

---

[6] The Court notes that "[a] clear line has not been drawn in this Circuit between what is and what is not sufficient detail for the repair estimate." *Monistere v. State Farm Fire & Cas. Co*., 559 F.3d 390, 396 (5th Cir. 2009).

disagreed about was the meaning of this section. (*Def.'s PP-TFFCL* ¶¶ 57, 61, Doc. 65; *Pl.'s Resp. PP-TFFCL* ¶¶ 11–12. Doc. 69; *Def.'s Resp. PP-TFFCL* ¶ 2, Doc 70.) (*Id.*)

93. Since then, both parties now agree that the 2021 Manual applies.

94. Because the 2021 Claims Manual imposes no requirement of proof regarding alternative methods and the like, the Court evaluates Tompkins' testimony on the issue of the cost of sheathing replacement standing alone and finds it adequate to support the Plaintiff's demand of $34,951,62.[7]

## IV.    CONCLUSION

For the foregoing reasons, judgment will be rendered in favor of Plaintiff and against Allstate in the amount of $34,951.62.

Signed in Baton Rouge, Louisiana, on <u>February 4, 2022</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[7] After the June 8, 2021, bench trial concluded, (*Min. Entry*, Doc. 60), and after *Pl.'s PP-TFFCL* (Doc. 66) and *Pl.'s Resp. PP-TFFCL*, Doc. 69, were filed on July 21, 2021, and July 28, 2021, respectively, Plaintiff's counsel stated in a related flood case that "the exterior replacement method is considered 'best practice' in the LSU Ag Center report." (*Breau v. Allstate Ins. Co.*, CIVIL ACTION No. 17-876-JWD-SDJ, *Pls.' Resp. Req. Pocket Br.*, Doc. 26 (citing https://www.lsuagcenter.com/profiles/sfiser/articles/page1474660090140 ).) However, Plaintiff made no such offer of evidence in the instant trial. Because this information was not introduced in this case, the Court has not considered it.

24